IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| CARILION CLINIC, et al, ) | |
| Plaintiffs, ) | |
| ) | Case No. 7:21-cv-00168 |
| v. ) | |
| ) | |
| AMERICAN GUARANTEE & ) | |
| LIABILITY INSURANCE CO., ) | By: Michael F. Urbanski |
| Defendant. ) | Chief United States District Judge |

## MEMORANDUM OPINION

This matter is before the court on the motion to reconsider filed on August 10, 2022, by plaintiff Carilion Clinic in its insurance coverage suit against American Guarantee & Liability Insurance Company ("AGLIC"). Mot. to Reconsider, ECF No. 122. More than six months after the court's February 4, 2022, ruling on the motion to dismiss, Carilion Clinic asks the court to address certain arguments it suggests the court did not address in its earlier forty-page memorandum opinion. In that ruling, the court granted AGLIC's motion to dismiss Carilion Clinic's claim for insurance coverage under the Property Damage and Time Element provisions of the insurance policy, but denied AGLIC's motion to dismiss as to the Interruption by Communicable Disease coverage.[1]

As to the Property Damage and Time Element coverage, the court concluded:

---

[1] The limits of liability agreed to by Carilion Clinic and AGLIC for the Property Damage and Time Element coverage and the Communicable Disease coverage are dramatically different. Whereas the limit of liability for the Property Damage and Time Element coverage is $1.3 billion, the Interruption by Communicable Disease coverage is limited to a 30-day period not to exceed $1 million. Zurich EDGE Policy §§ 2.03.06, 2.03.08, ECF No. 43-1.

1

> On balance, the court is persuaded by the uniform holdings of federal courts of appeals around the country that losses due to business interruption caused by the SARS-CoV-2 virus are not "direct physical loss of or damage" under the Zurich EDGE Healthcare Policy issued by AGLIC to Carilion Clinic. While the virus and COVID-19 have undoubtedly caused Carilion Clinic to suffer losses in terms of facility shutdown, reduction of medical procedures, and increased costs, the losses are not direct physical losses covered under the property insurance policy.

Mem. Op., ECF No. 104, at 28.

As the court's earlier ruling detailed, Carilion Clinic also purchased "Special Coverage that plainly applies to losses sustained as a result of the COVID-19 pandemic." Id. at 37. The court denied AGLIC's motion to dismiss as to this coverage, and understands that the parties have resolved their dispute as to this coverage.

In asking the court to reconsider its prior ruling, Carilion Clinic selectively mentions the few cases in which motions to dismiss on COVID-19 coverage have been denied, and completely ignores the mountain of precedent from around the country denying coverage under similar policies. By and large, Carilion Clinic's motion to reconsider sidesteps the uniform decisions of United States Courts of Appeals, including the published decision of the Fourth Circuit Court of Appeals in Uncork and Create, LLC v. Cincinnati Insurance Co., 27 F.4th 926 (4th Cir. 2022), denying property damage coverage for the COVID-19 pandemic. Instead, the motion to reconsider asks the court to reverse course based on the very few decisions that have favored the insured, without regard to salient differences in the policies involved in those cases. Carilion Clinic's argument is not supported by the text of the Zurich EDGE Policy nor the vast majority of cases that have decided these issues. As such, the motion to reconsider will be **DENIED**.

Carilion Clinic argues that the court did not address certain of its arguments in its February 4, 2022, memorandum opinion. In order to provide a comprehensive record to the court of appeals, the court supplements its prior memorandum opinion as follows.

## I.

Carilion Clinic asserts that the court did not address three aspects of its claim that its business interruption losses due to COVID-19 fell within the AGLIC's policy's coverage for direct physical loss of or damage to property.

## A.

Carilion argues that the very presence of the Interruption for Communicable Disease coverage demonstrates that COVID-19 may cause the type of physical loss of or damage to property that it alleges occurred. Carilion argues that because § 1.01 of the Zurich EDGE Policy, ECF No. 43-1, provides that "[t]his Policy Insures against direct physical loss of or damage caused by a Covered Loss to Covered Property at an Insured Location . . . , all subject to the terms, conditions and exclusions stated in this Policy," that losses subject to the Special Coverage for Interruption by Communicable Disease necessarily fall within the direct physical loss or damage umbrella.

The Interruption by Communicable Disease Special Coverage is found in § 5.02.35. Unlike most of the Special Coverages in the Zurich EDGE Policy, the Interruption by Communicable Disease coverage does not contain language limiting it to losses stemming from direct physical loss or damage. Rather, it provides that AGLIC will pay for actual Gross Earnings lost resulting from a necessary suspension of the insured's business "if the Suspension is caused by an order of an authorized governmental agency enforcing any law or

3

ordinance regulating communicable diseases and that such portions of the location are declared uninhabitable due to the threat of the spread of communicable disease, prohibiting access to those portions of the Location." § 5.02.35. The fact that coverage under this section does not require direct physical loss or damage, unlike the majority of the Zurich EDGE Policy, is important to understanding this provision of the policy. This section of the policy does not require direct physical loss or damage, rather coverage is based on whether the insured's business activities at an insured location are suspended by government order enforcing any law or ordinance regulating communicable diseases. As such, this Special Coverage is best understood as an exception to the overall policy requirement of direct physical loss or damage. Carilion Clinic's argument is backwards, and despite clear language throughout the remainder of the policy that losses are limited to direct physical loss or damage, would require the court to find that the exception reflected in the Interruption by Communicable Disease Special Coverage swallows the rule. The language of the policy does not allow such a upside down reading. Further, the fact that the Special Coverage for Interruption by Communicable Disease is not available if loss or damage is payable under any other provision of the policy supports the notion that the Special Coverage is just that—special—and does not apply if coverage is available elsewhere.

The recent California state case cited by Carilion Clinic, Marina Pacific Hotel and Suites, LLC v. Fireman's Fund, No. B316501, 296 Cal. Rptr. 3d 777, 2022 WL 2711886 (Cal. Ct. App. July 13, 2022), reaffirms, rather than undermines, this conclusion. Unlike the Zurich EDGE Policy in this case, in which the Special Coverage for Interruption for Communicable Disease is implicated in the case of a governmental suspension of the insured's operations, the

4

language in the communicable disease coverage in the Fireman's Fund policy at issue in Marina Pacific "states Fireman's Fund will pay for 'direct physical loss or damage' to insured property 'caused by or resulting from a covered communicable disease event,' including necessary costs to '[r]epair and rebuild [insured property] which has been damaged by the communicable disease.'" 296 Cal. Rptr. 3d at 790. The fact that the Fireman's Fund policy at issue in Marina Pacific specifically provides coverage for direct property damage or loss resulting from a communicable disease event distinguishes it in a meaningful way from the Zurich EDGE Policy at issue in this case. Not only does this material difference in the terms of the communicable disease policy language make it clear that the Marina Pacific decision is an outlier, the court in Marina Pacific also recognized that the result it reached "is at odds with almost all (but not all) decisions considering whether business losses from the pandemic are covered by the business owners' first person commercial property insurance." Id. at 788. That the Marina Pacific case relied upon by Carilion Clinic is an outlier was noted recently in a California federal decision. Creative Artists Agency, LLC v. Affiliated FM Ins. Co., No. 2:21-CV-08314-AB, 2022 WL 3097371, at *5 n.3 (C.D. Cal. July 27, 2022) ("[T]he Court finds the allegations raised in Marina Pacific Hotel & Suites are factually distinguishable from the allegations raised here, and is also at odds with the majority of decisions within this district."). But see L.A. Lakers, Inc. v. Fed. Ins. Co., No. 21-02281 (C.D. Cal. Oct. 26, 2022), ECF No. 130-8 (denying insurer's motion for reconsideration of denial of motion to dismiss based on Marina Pacific).

In its reply memorandum, Carilion Clinic cites Amy's Kitchen, Inc. v. Fireman's Fund Insurance Co., No. A163767, 2022 WL 4875656 (Cal. App. 5th. Oct. 4, 2022), another

5

California state case, for the proposition that the existence of Communicable Disease Coverage is a "recognition . . . that communicable diseases can cause PLOD [physical loss or damage] and trigger coverage for such loss." Reply Br. in Supp. of Mot. for Reconsideration, ECF No. 130, at 19. But the court's decision in <u>Amy's Kitchen</u> can only be understood in the context of the policy language at issue in that case. The communicable disease extension of the Fireman's Fund policy reads as follows:

> (1) We will pay for direct physical loss or damage to Property Insured caused by or resulting from a covered communicable disease event at a location including the following necessary costs incurred to: (a) Tear out and replace any part of the Property Insured in order to gain access to the communicable disease; (b) Repair or rebuild Property Insured which has been damaged or destroyed by the communicable disease; or (c) Mitigate, contain, remediate, treat, clean, detoxify, disinfect, neutralize, cleanup, remove, dispose of, test for, monitor, and assess the effects [of] the communicable disease.

<u>Id.</u> at *4. The California state court declined to read subparagraph (c) out of the communicable disease extension coverage, reasoning as follows:

> [T]reating physical alteration as an additional condition of coverage, as Fireman's urges, would render subparagraph illusory—both redundant and meaningless. Subparagraphs (a) and (b) address the situation in which the presence of a communicable disease leads to physical alteration of the insured's property, where property must be torn out, repaired, or replaced. If subparagraph (c) were construed to apply only if there is a physical alteration of the property, the provisions would have no possible application not covered by subparagraphs (a) and (b).

<u>Id.</u> at *5. The Interruption by Communicable Disease provision of the Zurich EDGE Policy contains no comparable language, limiting its application to this case. In any event, the result in <u>Amy's Kitchen</u>, to find communicable disease coverage insurance policy provisions applicable to the COVID-19 pandemic, is consistent with the conclusion reached by this court

in denying AGLIC's motion to dismiss as to the Interruption by Communicable Disease coverage.

Carilion Clinic's citation of the recent decision by the Eastern District of California in Sacramento Downtown Arena LLC v. Factory Mutual Insurance Co., No. 2:21-cv-441, slip op. (E.D. Cal. Oct. 28, 2022) (docketed in this case at ECF No. 130-7), is likewise not helpful because of the salient difference in the policy language at issue there. Under the header "ADDITIONAL COVERAGES," the Factory Mutual Insurance Company policy stated "This Policy includes the following Additional Coverages for insured physical loss or damage." One additional coverage listed in this section was titled "COMMUNICABLE DISEASE RESPONSE." This coverage applied when access to a covered location was limited, restricted, or prohibited in excess of 48 hours by "the actual not suspected presence of communicable disease." The policy covered reasonable and necessary costs incurred for the "cleanup, removal and disposal of the actual not suspected presence of communicable diseases from insured property."

The Eastern District of California cited two provisions of the Factory Mutual policy at issue in that case in support of its ruling denying the insurer's motion to dismiss:

> No matter what might be possible to plead and prove about a different policy and viral pandemics in the abstract, the policy at the center of this case can reasonably be interpreted as defining the presence of a "communicable disease" as "physical loss or damage." The policy's first sentence explains that it offers coverage only for risks of "physical loss or damage." Policy at 1. It later lists "Additional Coverages for insured physical loss or damage." Id. at 15. And among these additional coverages—by definition, all "for physical loss or damage"—the policy lists "the reasonable and necessary costs incurred" in response to government orders regulating the actual presence of a "communicable disease." Id. at 20. An insured could reasonably

7

> expect, given these terms, that the presence of a communicable disease such as COVID-19 fits under the "physical loss or damage" umbrella for the policy as a whole.

Sacramento Downtown, slip op. at 6. While the first part of the Eastern District's rationale is decision tracks Carilion Clinic's position regarding § 1.01 Insuring Agreement of the Zurich EDGE Policy, providing that "This Policy Insures against direct physical loss of or damage caused by a Covered Cause of Loss to Covered Property," the second aspect is lacking. Unlike the Additional Coverages section of the Factory Mutual policy at issue in Sacramento Downtown, which expressly provides that the Additional Coverages are "for insured physical loss or damage," no similar linkage is present in the Special Coverages section of the Zurich EDGE Policy issued to Carilion Clinic. In that respect, the Zurich EDGE Policy more closely resembles the AFM Policy at issue in Nguyen v. Travelers Casualty Insurance Company of America, 541 F. Supp. 3d 1200, 1227 (W.D. Wash. 2021), a case that the Sacramento Downtown court made a point of distinguishing as follows:

> Although the policies in this case and Nguyen are similar, they differ in one crucial respect. In Nguyen, the policy simply listed the communicable disease provision as one of many "additional coverages." It did not describe the communicable disease provisions as one additional coverage "for insured physical loss or damage," as the plaintiff's policy does in this case.

Sacramento Downtown, slip op., ECF No. 130-7, at 7 (internal citation omitted). The Zurich EDGE Policy differs in the same "crucial respect" from the policy language at issue in Sacramento Downtown, rendering reliance on the Eastern District of California's decision in that case distinguishable by its own reasoning.

Carilion Clinic urges reliance on the Supreme Court of Vermont's decision in Huntington Ingalls Industries, Inc. v. Ace American Insurance Co., No. 2021-173, 2022 WL

8

4396475 (Vt. Sept. 23, 2022), which the court does not find persuasive. The Huntington Ingalls court found that the presence of coronavirus on the insured premises altered the property by adhering to surfaces. Id. at *6-8. As explained in this court's earlier opinion, Mem. Op., ECF No. 104, at 26-30, nothing about Carilion Clinic's conclusory allegations suggest that the presence of the virus directly physically altered any of its property in any way. The Eastern District of Pennsylvania reached the same conclusion in a recent decision dismissing a coronavirus coverage claim under a Zurich EDGE policy. Greenwood Racing, Inc. v. Am. Guarantee and Liab. Ins. Co., No. 21-1682, 2022 WL 4133295, at *4 (Sept. 12, 2022) ("Even if viruses live on surfaces and can be transferred to humans who come into contact with those surfaces, viruses do not *damage* or affect a property in ways that would render it physically unusable or uninhabitable.").

In addition to the court's substantive conclusion that the state court decisions principally relied upon by Carilion Clinic—Marina Pacific, Amy's Kitchen, and Huntington Ingalls—do not support reconsideration of the court's prior ruling, it is worth noting that these decisions were not decided using the procedural framework at issue in federal court. Unlike the state courts in those cases, federal courts are governed by the Federal Rules of Civil Procedure and the plausibility pleading standard articulated by the Supreme Court in Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007), and Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). As such, these state court decisions are procedurally distinct. [2]

---

[2] While Carilion Clinic provides the state court jury verdict in Baylor College of Medicine v. Underwriters at Lloyds Syndicates, No. 2020-533156 (Tex. Dist. Ct. Harris Cty. Aug. 31, 2022) (docketed in this case at ECF No. 130-6), it fails to identify any ruling by the court in that case addressing the policy language at issue there which the court can examine. As such, the citation to the Baylor College of Medicine jury verdict adds nothing of substantive value to the legal analysis.

**B.**

Carilion Clinic next argues that the court did not address its argument that mere slowdown of business operations is covered by the Zurich EDGE Policy's business interruption provision. Regardless of whether it suffered a shutdown or slowdown of its business activities due to the COVID-19 pandemic, Carilion Clinic must still plausibly allege that the presence of SARS-CoV-2 droplets in the air and on surfaces in its facilities constitutes physical alteration to its property, which it is simply unable to do.

Carilion Clinic's citation of Cajun Conti LLC v. Certain Underwriters at Lloyd's, London, No. 2021-CA-0343, 2022 WL 2154863 (La. Ct. App. June 15, 2022), does not persuade the court to reconsider its decision. In Cajun Conti, the Court of Appeals of Louisiana reversed a trial court's finding of no coverage under a Lloyd's of London all-risks insurance policy for lost business income suffered by a New Orleans restaurant as a result of the COVID-19 pandemic, concluding that ambiguity in policy language required that it be interpreted in favor of the insured. Subsequently, however, the Fifth Circuit Court of Appeals declined to apply Cajun Conti in affirming the appeal of a motion to dismiss in favor of an AGLIC insured party in Dickie Brennan and Co., L.L.C. v. Zurich American Insurance Co., No. 21-30776, 2022 WL 3031308 (5th Cir. Aug. 1, 2022), reasoning that "[b]ecause COVID-19 did not cause a 'tangible alteration to, injury to, or deprivation of' Dickie Brennan's restaurants, there was no coverage-triggering physical loss." Id. at *2. The Fifth Circuit determined not to follow the intermediate state appellate court decision in Cajun Conti, concluding that "because the Louisiana Supreme Court has not rejected Q Clothier, we conclude that Cajun Conti does not alter our analysis." Id. (citing Q Clothier New Orleans,

L.L.C. v. Twin City Fire Ins. Co., 29 F.4th 252 (5th Cir. 2022)). See also Exceptional Dental of La., LLC v. Bankers Ins. Co., No. 22-3, 2022 WL 4774645 (E.D. La. Oct. 3, 2022) (rejecting Cajun Conti); Port Cargo Servs., LLC v. Westchester Surplus Lines Ins. Co., No. 22-1018, 2022 WL 3576759, at *5 (E.D. La. Aug. 19, 2022) (quoting the dissent in Cajun Conti and concluding that "plaintiffs' petition fails to plausibly state a claim under the theory that COVID-19 caused direct physical loss or damage").[3] In short, Carilion Clinic's reliance on the outlier decision in Cajun Conti does not persuade the court to stray from the majority rule and find that the presence of SARS-CoV-2 droplets in the air and on surfaces in Carilion Clinic facilities resulted in direct physical loss of or damage to property requiring repair or replacement.

## C.

Sweeping aside the overwhelming number of cases finding no coverage for COVID-19 business losses, Carilion Clinic seeks reconsideration by claiming that its allegations of physical loss or damage are more "robust." Mem. in Supp. Mot. to Reconsider, ECF No. 123, at 25. Carilion Clinic cites scientific studies in amicus briefs filed in the Court of Appeals of Maryland and the New Hampshire Supreme Court, but these studies undermine the premise

---

[3] The Port Cargo Services court made another good point in concluding that cleaning and sanitizing a facility exposed to the coronavirus does not square with language in the policy indicating when the period of coverage ends. Coverage for direct physical loss of or damage to insured property extended during the period of restoration, defined as when the property should be "repaired, rebuilt or replaced." The court noted that "the triad 'repaired, rebuilt or replaced' only deepens the sense that the envisioned loss or damage requires a type of reconstruction. In the context of this policy and in its ordinary use, 'repaired' does not mean mere exterior 'cleaning' or 'sanitizing.' . . . With repair unambiguously requiring a physical reconstruction, COVID-19 cannot be found as the cause of direct physical loss or damage." Port Cargo Servs., 2022 WL 3576759, at *6. The same reasoning applies to the Zurich EDGE Policy here, where the period of liability is defined as "[t]he period starting from the time of physical loss or damage of the type insured against and ending when due diligence and dispatch the building and equipment could be repaired or replaced, and made ready for operations under the same or equivalent physical and operating conditions that existed prior to the damage." Zurich EDGE Policy, ECF No. 43-1, § 4.03.01.01.

11

of its argument. Each of these briefs make the identical point that surface cleaning is ineffective to eliminate the coronavirus because it is spread through the air by infected persons.

> SARS-CoV-2 is persistent. Given the ubiquity and pervasiveness of SARS-CoV-2, no amount of cleaning, disinfection or even the dissipation of SARS-CoV-2 with the passage of time, will protect an indoor space from reintroduction of the virus if the space is open to persons infected with COVID-19. Any one infected person who enters an indoor space and exhales millions of additional SARS-CoV-2 droplets and infectious aerosols into the air, fills the room air with aerosolized and hazardous SARS-CoV-2 that can be inhaled by others.
>
> The continuous reintroduction of SARS-CoV-2 by infectious persons into a publicly open indoor space renders cleaning, disinfection and even dissipation over time ineffective and futile. None of these things, while they may mitigate the situation temporarily, eliminates the presence of SARS-CoV-2. As such, none of these things make indoor property safe, habitable or fit for its intended use, especially with respect to the time period before the emergence of widely available vaccinations for COVID-19 and effective and available treatments for COVID-19.

Amicus Br. of Maryland State Medical Society, Tapestry, Inc. v. Factory Mut. Ins. Co., COA-MISC-0001-2022, 2022 WL 1227058 (Md. Ct. App. April 25, 2022), ECF No. 123-1, at 12; Amicus Br. of New Hampshire Medical Society, Schleicher and Stebbins Hotels, LLC. v. Starr Surplus Lines Insurance Co., No. 2022-0155 (N.H. 2022), ECF No. 123-2, at 17.

As these amicus briefs make clear, SARS-CoV-2 does not cause direct physical loss of or damage to property, rather it harms people who breathe indoor air into which an infected person has exhaled SARS-CoV-2 droplets and infectious aerosols. The Zurich EDGE Policy providing business interruption coverage resulting from "direct physical loss of or damage caused by a Covered Cause of Loss to Covered Property," simply cannot be read to extend to cover such personal harm.

## II.

Carilion Clinic next argues that the court did not address three aspects of its claim that the Contamination Exclusion does not preclude coverage for its COVID-19 losses. Each of these arguments suggests that the Contamination Exclusion is at odds with the Special Coverage for Interruption by Communicable Disease.

### A.

Carilion Clinic argues that the court did not address its argument that the Contamination Exclusion renders the Interruption by Communicable Disease coverage illusory. Section 3.03.01.01 excludes "Contamination and any cost due to Contamination including the inability to use or occupy property or any cost of making property safe for use or occupancy. . . ." Contamination is defined as "Any condition of property due to the actual presence of any foreign substance, impurity, pollutant, hazardous material, poison, toxin, pathogen or pathogenic organism, bacteria, virus, disease causing or illness causing agent, Fungus, mold or mildew." Zurich EDGE Policy, ECF No. 43-1, at § 7.09. Carilion Clinic asserts that "AGLIC knew how to carve out an exception to the exclusion but did not do so with respect to losses from communicable diseases," citing a carve out for radioactive contamination. Mem. in Supp. Mot. to Reconsider, ECF No. 123, at 21.

Carilion Clinic's argument misses an important point. Under Virginia law, "an exclusion is only effective against an insured if it is unambiguous." St. Paul Fire & Marine Ins. Co. v. Gen. Injectables & Vaccines, Inc., No. CIV.A.98-07370R, 2000 WL 270954 (W.D. Va. March 3, 2000). As such, while the Zurich EDGE Policy does not expressly carve out the Interruption for Communicable Disease coverage from the Contamination Exclusion, the

court is required to construe the policy to do so. As the Supreme Court of Virginia stated in Bituminous Casualty Corp. v. Sheets, 239 Va. 332, 336, 389 S.E.2d 696, 698 (1990),

> [B]ecause insurance contracts are ordinarily drafted by insurers rather than policyholders, the courts consistently construe such contracts, in cases of doubt, in favor of that interpretation which affords coverage, rather than that which withholds it. Policy language purporting to exclude certain events from coverage will be construed most strongly against the insurer.

Under this familiar principle, Carilion Clinic's argument that application of the Contamination Exclusion would eviscerate the Special Coverage afforded by the Interruption by Communicable Disease provision is an ineffectual straw man. Rather than render the Interruption by Communicable Disease coverage to be illusory, the better reading of the Zurich EDGE Policy, consistent with established legal principles, is to read that Special Coverage in Carilion Clinic's favor and apply it to its limit of liability. Not only is Carilion Clinic's argument that the Special Coverage for Interruption by Communicable Disease logically upside down, it ignores the fact that the Special Coverage for Interruption by Communicable Disease is limited to a 30-day period not to exceed $1,000,000, while the Property Damage and Time Element coverage is $1,300,000,000. Zurich EDGE Policy, ECF 43-1, at §§ 2.03.06, 2.03.08. Given the stark difference in the policy limits for the distinct coverage provisions, it makes no sense to allow the existence of the smaller Special Coverage to invalidate an exclusion applicable to the far larger Property Damage and Time Element coverage. Rather, reading the terms consistently, the Interruption by Communicable Disease Special Coverage is best understood as a limited exception to the Contamination Exclusion.

Carilion Clinic faults the court for not mentioning the Alameda County, Superior Court of California, opinion in Ross Stores, Inc. v. Zurich American Insurance Co., No. RG20-

14

084158, 2021 WL 3700659 (July 13, 2021). In Ross Stores, the state trial court found the Contamination Exclusion in a Zurich Property Policy to be ambiguous in the context of the contract as a whole and denied the insurer's demurrer. The Ross Stores court stated:

> Read in the context of the Property Policy as a whole, the scope of the Contamination exclusion is unclear. The Contamination exclusion as read in isolation would exclude the coverage that is expressly provided in the "Additional Coverage" for "Communicable Disease Response," for "Decontamination Costs" and for "Interruption by Communicable Disease." As a general principle, the court will not read one section to nullify another section of a contract. The court is even less inclined to read an exclusion, which is narrowly construed, to nullify two or three coverage provisions, which are construed broadly.

Id. at *11. While the court in Ross Stores found the Contamination exclusion to be ambiguous and denied the demurrer, the court in this case goes a step further and, considering all of the terms of the insurance contract, including the limits of liability, construes the policy language in a manner that is consistent with the intent of the parties. Again, that construction is to read the Interruption by Communicable Disease Special Coverage, with its confined limit of liability, as an exception to the generally applicable Contamination Exclusion.

**B.**

Carilion Clinic contends that the court did not address its argument that the Contamination Exclusion does not exclude coverage for "loss" caused by the presence of communicable disease. In this regard, Carilion Clinic urges the court to follow the reasoning of the court in Thor Equities v. Factory Mutual Insurance Co., 531 F. Supp. 3d 802 (S.D.N.Y. 2021). Since Thor was decided, however, a number of other courts have declined to reach the same conclusion. For example, the Sixth Circuit Court of Appeals in Dana Inc. v. Zurich

15

American Insurance Co., No. 21-4150, 2022 WL 2452381 (6th Cir. July 6, 2022), addressed

and rejected this very argument as follows:

> Dana argues that even if the contamination exclusion applies to the time element section, it does not bar coverage for the types of losses Dana seeks to recover—time element losses—because the contamination exclusion does not use the word "loss," but instead refers to costs and damages.
>
> The policy insures time element loss "directly resulting from physical loss or damage of the type insured . . . to property described elsewhere in this Policy and not otherwise excluded by this Policy." But contamination is not a "type insured." The policy excludes "**contamination**, and any cost due to **contamination**" unless the contamination directly results "from other physical damage not excluded by this Policy." Under the policy, contamination is "any condition of property due to the actual or suspected presence of any . . . pathogen or pathogenic organism, bacteria, virus, [or] disease causing or illness causing agent."
>
> Looking to the plain language of the policy, the actual or suspected presence of a virus like COVID-19 on Dana's property is contamination. The policy excludes coverage of contamination and any cost from contamination, unless directly resulting from other covered physical damage. Dana's claims are exclusively based on damage and loss related to COVID-19, not other physical damage. Therefore, the contamination of COVID-19 on Dana's property is excluded. Regardless whether the contamination exclusion uses the words "loss," "cost," or "damage," Dana cannot recover for time element loss from this contamination because the policy only covers time element loss resulting from covered damage. As contamination from COVID-19 is excluded, there is no coverage for time element loss from this contamination.

Id. at *3 (internal citations omitted). The Sixth Circuit disagreed with the conclusion reached

by the district court in Thor as follows:

> In opposition, Dana cites Thor Equities, LLC v. Factory Mutual Insurance Co., 531 F. Supp. 3d 802 (S.D.N.Y. 2021). The court in Thor held a similar contamination provision was ambiguous as

16

> to whether losses were excluded or only costs. 531 F. Supp. 3d at 808. But Thor did not consider the interaction between the contamination provision and the language establishing time element loss coverage. See id. Therefore, the court did not consider the critical question here: whether there was a covered incident of damage to trigger time element loss coverage. See id.

Id. at *3 n.4. The Sixth Circuit's analysis in Dana applies equally well in this case. Other courts likewise have disagreed with Thor's interpretation.

For example, in OTG Management PHL LLC v. Employers Insurance Co. of Wausau, 557 F. Supp. 3d 556 (D. N.J. 2021), the court reasoned:

> Plaintiffs' distinction between "*costs* of Contamination" excluded from coverage by the Contamination Exclusion and "losses" or "extra expenses" covered under the Time Element coverage is similarly unpersuasive. As noted, the Policy broadly defines the term "contamination" to mean "any condition of property that results from a contaminant" such as a virus. Id. at § VII (3)-(4). In other words, the Contamination Exclusion unambiguously provides that Defendant will not cover "any condition of property" resulting from a virus nor any cost due to any condition of property resulting from a virus. Moreover, the Contamination Exclusion clearly and unambiguously encompasses "the inability to use or occupy property." Thus, regardless of whether there is a distinction between "costs" on the one hand and "losses" and "extra expenses" on the other, it is clear that the Contamination Exclusion cannot be so limited without rendering parts of it entirely meaningless.

Id. at 565-66. Likewise, in Ralph Lauren Corp. v. Factory Mutual Insurance Co., 2021 WL 1904739, at *4 n.8 (D. N.J. May 12, 2021), the court stated:

> This Court declines to follow the non-binding decision in Thor Equities, LLC v. Factory Mutual Insurance Company, which found an identical contamination exclusion ambiguous. As in Thor Equities, Plaintiff here attempts to restrict the Contamination Exclusion to expended "costs" only. This distinction is superfluous. Indeed, the court in Thor Equities acknowledged that "[p]laintiff's reading of the exclusion could tend to render certain aspects of the exclusion meaningless."

17

The Ralph Lauren court noted the insurer's argument that "the conjunctive use of 'and' —specifically, 'contamination, and any cost due to contamination including the inability to use or occupy property'—destroys Plaintiff's proffered interpretation of the exclusion." Id. Other courts have agreed. See Cordish Cos., Inc., v. Affiliated FM Ins. Co., 573 F. Supp. 3d 977, 1005 (D. Md. 2021) ("Again, starting with the plain language of the provision, it is clear that plaintiff's interpretation does not hold up. In particular, plaintiff's focus on the word 'cost' as limiting the applicability of the entire exclusion would require the Court to ignore other portions of the provision."); Lindenwood Female Coll. v. Zurich Am. Ins. Co., 569 F. Supp. 3d 970, 976-77 (E.D. Mo. 2021) ("Plaintiffs argue that the Contamination Exclusion applies only to claims made for 'costs' as opposed to income 'losses[.]' The Court disagrees. The policy provides that the 'time Element loss' must be caused by a 'Covered Cause of Loss,' which is defined as all risks of direct physical loss of or damage from any cause unless excluded. Contamination is excluded. It is clear therefore that the Contamination Exclusion applies to both the Property Damage and Time Element coverages provided for therein."); Chef's Warehouse, Inc. v. Liberty Mut. Ins. Co., 2022 WL 3097093, at *8 (S.D.N.Y. May 2, 2022) ("And on plaintiff's reading, if defendants intended the contamination exclusion to eliminate coverage for all loss or damage due to contamination, the provision would not have singled out cost while remaining silent as to other forms of recovery. This Court finds this reading to be untenable. As noted, the policy broadly defines the term "contamination" to mean any condition of property that results from the contaminant, including a virus. The provision, thus, unambiguously bars coverage for any condition of property resulting from a virus and any cost

due to such a condition."); One Grp. Hosp., Inc. v. Emps. Ins. Co. of Wausau, No. 22-00285-CV-W-BP, 2022 WL 4594491 (W.D. Mo. Sept. 29. 2022) (rejecting Thor Equities).

As these courts have recognized, the Contamination Exclusion is not limited to recovery of costs alone and operates to exclude business losses under the Time Element coverage associated with Carilion Clinic's inability to use or occupy property stemming from the actual presence of the of the SARS-CoV-2 virus.

### C.

Finally, Carilion Clinic argues that the court did not address its argument that the absence of an anti-concurrent causation clause in the Contamination Exclusion "at the very least, creates a dispute of fact to the extent that AGLIC argues that Carilion Clinic's losses are caused by Coronavirus (a virus) and not COVID-19 (a communicable disease)." Mem. in Supp. Mot. to Reconsider, ECF No. 123, at 29. Again, construing the exclusion in the light most favorable to the insured, the court construes the Interruption by Communicable Disease Special Coverage to be an exception to the Contamination Exclusion. As such, there is no inconsistency between these two provisions of the Zurich EDGE Policy.

### III.

In Uncork and Create, decided a month after the February 4, 2022, memorandum opinion in this case, the Fourth Circuit, applying West Virginia law, reached the conclusion that business interruption losses resulting from the COVID-19 pandemic were not covered under a commercial property insurance policy. The Fourth Circuit concluded:

> Here, neither the closure order nor the Covid-19 virus caused present or impending material destruction or material harm that physically altered the covered property requiring repairs or replacement sot that they could be used as intended. Thus, we

19

> hold that the policy's coverage for business income loss and other expenses does not apply to Uncork's claim for financial losses in the absence of any material destruction or material harm to its covered premises.

27 F.4th at 933. As was true with the court's February 4, 2022, memorandum opinion, the Fourth Circuit "observe[d] that our holding is consistent with the unanimous decisions by our sister circuits, which have applied various states' laws to similar insurance claims and policy provisions," id.; see also Golden Corral Corp. v. Ill. Union Ins. Co., No. 21-2119, 2022 WL 3278938, at *1 (4th Cir. Aug. 11, 2022) (per curiam) (following Uncork & Create).

The arguments raised by Carilion Clinic in its motion to reconsider and the few cases cited in support thereof provide no basis for the court to change its earlier ruling on the motion to dismiss. Carilion Clinic's position has been rejected by an overwhelming majority of the cases considering similar coverage issues. Accordingly, the motion to reconsider, ECF No. 122, is **DENIED**.

Entered: November 16, 2022

Michael F. Urbanski
Chief U.S. District Judge